*No. 2.*

### ATWATER *against* SEYMOUR. *Addison*, 1818.

WHERE A. mortgages land to B. and the debt is paid as it falls due, but the mortgage is not discharged on record, and afterwards A. mortgages to C. : A. and B. then *fraudulently* procure a foreclosure of the mortgage to B. so that B.'s title on record appears fair ; afterwards D. purchases *bona fide* under the title of B.

Held—That D. shall hold the land against C.

*CASE stated.* James Seamen, being seized in fee, on the 11th day of April, 1809, sold, and by deed of that date legally authenticated, to which reference is to be had for description of the premises, conveyed to Lyman Clark and Russell Clark a certain piece or parcel of land, in Middlebury, in the county of Addison, and for the purchase money, the consideration thereof, the said L. & R. Clark, made to said Seamen their two several notes of hand of the same date, payable in horses, to be delivered in Hubbardton, one note payable on the first day of October (then) next, October, 1806, the other payable on the 20th day of May, 1807, and as collateral security, the said Clarks executed to Seaman a mortgage deed of the premises, of the same date, conditioned to be void on the payment of said note, according to the tenor of the same respectively, which mortgage deed was at the same time legally authenticated by acknowledgement and record ; the said notes were regularly paid as they fell due, and were taken up by said Clarks and cancelled, but the mortgage was not cancelled or any discharge thereupon made or given : On the 31st of August, A. D. 1807, the said Clarks by an absolute deed conveyed the same property to Jeremiah Atwater, the present plaintiff, for the consideration, as expressed, of twelve hundred dollars, but which was intended as security for a less sum, before that time lent and

2 C

advanced to the said Clarks by the said plaintiff, said last mentioned deed was at the same time duly acknowledged and recorded : On the first day of August, 1809, the plaintiff executed a writing to said Clarks thereby acknowledging that said deed was given for securing the re-payment of the money so lent by him to the said Clarks, being the sum of seven hundred dollars, and promising on the re-payment of the same with interest, on the first day of January (then) next, to reconvey the premises to the said Clark ; no part of said sum was paid. The plaintiff's deed, by reason of the said writing given to the Clarks, as aforesaid, being considered in the nature of a mortgage, at the January term of the Supreme Court for Addison County, 1810, he filed a bill in Chancery to foreclose the equity of redemption thereon, and obtained a decree of foreclosure, if the money found due should not be paid by the first day of June, 1811 ; the money was not paid and the decree of foreclosure took effect.

Soon after the purchase by the Clarks of Seaman, in 1806, Jesse Spencer took the premises and went to reside thereon, and Lyman Clark resided with him in his (Spencer's) family, so long as he the said Lyman resided in Middlebury.

On the 19th day of December, A. D. 1810, said James Seamen by deed of that date conveyed all his right, title and interest in the premises to the said Spencer, expressed to be for the consideration of eighteen hundred dollars, but in fact for some small or no consideration paid by Spencer, who had also a personal knowledge of the full payment made as aforesaid, by the Clarks to the said Seaman, as well as of Atwater's claim ; this last mentioned deed from Seaman to Spencer was acknowledged but not then recorded.

At the term of the Supreme Court for Addison County, January, 1811, a bill was filed in Seaman's name against the Clarks, to foreclose their mortgage to Seaman, and a decree obtained for a foreclosure, if the money, which on the shewing appeared to be still due, should not be paid by the second Monday of January, 1812.

The money was not paid, and accordingly the foreclosure took effect against the Clarks.

. After said decree, on the 23d January, 1811, the deed from Seaman to Spencer, as aforesaid, was recorded in the proper office.

To shew a sum due on Seaman's mortgage, a note was produced to the Court, in the hand writing of Lyman Clark, one of the mortgagors, of the same tenor and date with one of the notes so paid and taken up, as before stated.

Sometime in the year 1810, Lyman Clark went from Middlebury to reside elsewhere, leaving the said Jesse Spencer in possession of the premises; nor has either the said Lyman Clark or Russell Clark had, since that time, any concern in the premises, the said Spencer acting as the owner; and others holding or claiming under him, continued in the undisturbed possession of the premises, until the death of Spencer, which happened some time in the month of ——, 1816, and before the plaintiff's action.

On the 23d day of February, 1814, Horatio Seymour, one of the defendants, without any notice of the payment made by the Clarks to Seaman, on his mortgage, or of any fraud or collusion between the said Spencer, Seaman, and Clark, or any of them, in that respect, *bona fide* and for a valuable consideration of three hundred and sixty-eight dollars, by him therefor paid to Spencer, in his life time, purchased of him, the said Spencer, and Spencer, by good deed of conveyance well authenticated, sold and conveyed to him, said Seymour, all that part of the premises described in the plaintiff's declaration, and not disclaimed by the plea; by virtue of which said last mentioned conveyance, he, the said Seymour, entered into possession thereof, and ever since hath continued in peacable possession thereof.

Although the said Seymour had no knowledge of the payment of Seaman's mortgage, he knew of the plaintiff's deed from Lyman and Russell Clark.

Now if the Court be of opinion that the plaintiff ought, in

law, to recover, Judgment to be entered for plaintiff, otherwise, Judgment for defendant.

For the plaintiff it was contended by *Starr* and *D. Chipman,* That on payment of the notes, the legal interest of Seaman was at an end, and that a title under a mortgage is liable to be defeated, by shewing payment of the debt for which the land was mortgaged, and the Court will presume that an old mortgage is paid. Powell on Mortgages 138. 2 Burr 979.

True it is, that on record there appeared to be a good title in Seaman, but the Court are not bound to consider the record conclusive, but may set aside any deed, though intermediate for fraud.

As the mortgage to Seaman was paid, he had no interest and could convey none to Spencer, consequently nothing passed to defendant Seymour.

Under the Statute of Elizabeth, a bona fide purchaser without notice of fraud, may obtain a better title than the seller had, but such purchaser is saved by the *proviso* to the English Statute in favor of bona fide purchasers, without notice of fraud.

Our Statute has no such proviso, or saving clause, in favor of such bona fide purchasers.

Our Legislature intended to make our Statute different from the British, and to be more severe against fraud.

Our Statute has declared the fraudulent conveyance *void,* and the Court are not at liberty to vary it, or to supply a proviso by construction.

A subsequent conveyance cannot be valid without an express proviso in the Statute.

The fraud is extrinsic, and from its *nature* must be unknown to the purchaser. He, therefore, must run the risque of such frauds.

The plaintiff had no means to compel a discharge of the mortgage to Seaman.

*Contra.* For defendant *Phelps* and *N. Chipman :* The mortgage from Clark to Seamen was originally bona fide, but the foreclosure fraudulent.

There is no distinction between a fraudulent foreclosure and a fraudulent conveyance.

The defendant as *bona fide* purchaser, without notice, can hold against the plaintiff. If the purchaser has no notice he is not affected by the fraud.

In Great Britain mortgages are a mere pocket security for money, even, generally, a mere chattel interest ; they have no mode of recording to caution purchasers.

Our Statute has provided a system of recording that saves the notoriety of livery of seizin. A *mortgage* must be made notorious in the same manner as *other deeds*.

It is the duty of the vendee to see that the deeds to the vendor are recorded ; and the creditor ought to pursue the property while in the hands of fraudulent grantee. Our whole Statute recognizes the principle that such purchases as ours are valid, as it has made provision to secure the grantee against them. As the grantee can compel an acknowledgement of a deed, so a mortgagor may compel a discharge of the mortgage by the mortgagee, and it is the business of the purchaser from the mortgagor to see that such discharge is entered on record. It is the very object of this recording to secure him against a subsequent act of the mortgagee.

The British Statute stands distinct by itself and has two objects, to set aside fraudulent conveyances, and protect bona fide purchasers.

Our Statute is connected with the Statute providing for notoriety of conveyances by *recording*, the object of which is to provide a safe, easy, and notorious mode of conveying real estate.

Neglect in registering a conveyance operates as a fraud on an innocent second purchaser, and the person so neglecting shall be punished with the loss of his interest.

The plaintiff took his deed with full knowledge of the mortgage to Seaman, and it was his duty to see it cancelled, that he might be safe, and that *others* might not be deceived.

When defendant purchased there was every appearance of a good title, and he had no means of knowing to the contrary.

The Court are at liberty to adopt our construction of the Statute. It is only by construction that the first deed on record shall hold, where there is a prior deed, but recorded afterwards.

Opinion of the Court. The title which Seymour purchased from Spencer was, on record, a complete title, and he could not be affected by the latent fraud, but the plaintiff's suffering that title to stand an apparent good title on record, operated as a fraud upon strangers, and he shall suffer the consequence of his own neglect. A Judgment for the plaintiff would open the door to greater frauds than the Statute was intended to prevent, as a purchaser might permit an apparent good title to stand upon the record until it passed to bona fide purchasers and then defeat it, and so destroy the benefit of the recording system. A purchaser could never, by any diligence, be safe.

*Judgment*—That defendant is not guilty.

---

# Q.

QUI TAM—See Jurisdiction 8.     Abatement 10.

---

# R.

RECEIPTOR—See Notice 1.

---

# RECOGNIZANCE.